Angus Edwards, UT #4563
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6661
AEdwards@parsonsbehle.com
ecf@parsonsbehle.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TWIN CITY FIRE INSURANCE COMPANY, an Indiana corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SORENSON COMMUNICATIONS, LLC, a Utah limited liability company, CAPTIONCALL, LLC, a Delaware limited liability company,<br><br>Defendants. | **REDACTED COMPLAINT**<br><br>Case No. 23-cv-00653-JNP<br><br>Judge Jill N. Parrish |

Plaintiff Twin City Fire Insurance Company ("Twin City" or "The Hartford"), by and through its undersigned counsel, pursuant to 28 U.S.C. §§2201(a) and 2202 and Federal Rules of Civil Procedure 57, for its complaint against Defendants Sorenson Communications, LLC ("Sorenson") and CaptionCall, LLC ("CaptionCall") (collectively, the "Defendants") alleges, upon information and belief, as follows:

## PARTIES AND JURISDICTION

1. Twin City is an insurance company and corporation organized under the laws of the State of Indiana with its principal place of business in the State of Connecticut.

2. Sorenson is a limited liability company organized under the laws of the State of Utah with its principal place of business in the State of Utah.

3. Sorenson's managing member is SCI Holdings, LLC, a limited liability company organized under the laws of the State of Utah with its principal place of business in the State of Utah.

4. No member of Sorenson is a citizen of either the State of Indiana or the State of Connecticut.

5. CaptionCall is a limited liability company organized under the laws of the State of Delaware with its principle place of business in the State of Utah.

6. No member of CaptionCall is a citizen of either the State of Indiana or the State of Connecticut.

7. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because complete diversity exists between Twin City and Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims for relief occurred in this district.

I. **FACTUAL BACKGROUND**

9. In this insurance coverage action, The Hartford seeks a judgment declaring that The Hartford Professional Liability Insurance Policy, No. 34 PG 0415133-21, issued by Twin City to Sorenson for the November 30, 2021 to November 30, 2022 period ("The Hartford Policy") does not afford coverage to the Defendants with respect to: (1) ███████████████████████████████████████████ to Defendants and an October 18,

2022 "Notice of Circumstance and/or Potential Claim" from Sorenson and its subsidiaries sent to The Hartford regarding an ████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ and (3) a 2023 Consent Decree to be entered into between the FCC and the Defendants addressing the Defendants' violations of and/or noncompliance with FCC rules (the "2023 Consent Decree").

### A.     The December 3, 2021 Consent Decree

10.     On December 3, 2021, the FCC's Enforcement Bureau settled with Sorenson and its wholly-owned subsidiary, CaptionCall, to resolve the FCC's investigations into, and demands for payments regarding, CaptionCall's practices as a provider of Internet Protocol Captioned Telephone Service ("IP CTS"), an internet based form of Telecommunications Relay Services ("TRS").

11.     As part of the settlement, in addition to paying a $12.5 million civil penalty, CaptionCall agreed, in a Consent Decree and related FCC Order released on December 3, 2021, to reimburse $28 million to the TRS Fund[1], and to enter into a compliance plan to ensure further compliance with TRS rules (the "2021 Consent Decree").[2]

12.     The FCC reported that the 2021 Consent Decree represented the "largest recovery of monies for the TRS Fund and the largest fine for violations of the TRS rules."

---

[1] The Hartford understands that the TRS fund compensates TRS providers for reasonable costs of providing interstate telephone transmission services that enable a person with a hearing or speech disability to communicate with a person without hearing or speech disabilities.

[2] There is no dispute that the 2021 Consent Decree was never tendered to The Hartford for coverage and that it is not covered under The Hartford Policy.

13. The 2021 Consent Decree was the result of the Defendants' settlement of the FCC's prior claims and/or demands on the Defendants, which The Hartford understands began as far back as 2017.

14. The 2021 Consent Decree found that Sorenson and/or CaptionCall unduly offered and provided incentives (including monetary contest awards and free meals to hearing health professionals for referring users to CaptionCall's IP CTS) and improperly reported ineligible costs associated with wasteful practices to the TRS Fund as reasonable costs of providing services.

15. The 2021 Consent Decree also found that Sorenson and/or CaptionCall failed to collect from users identity validation documents, failed to retain documentation required to validate identities, and failed to attest to the user's eligibility to use IP CTS.

16. The 2021 Consent Decree contained CaptionCall's agreement to follow a stringent forward-looking compliance plan designed to ensure future compliance with communications laws and with the terms and conditions of the 2021 Consent Decree, including developing and distributing a compliance manual outlining the steps to follow to disclose to the FCC non-compliance with the rules under the purview of the FCC.

17. The 2021 Consent Decree provides a Reporting Noncompliance provision at Paragraph 24 obligating CaptionCall to report to the FCC any noncompliance with the TRS rules and with the terms and conditions of the 2021 Consent Decree.

18. These and other additional reporting requirements would be in place for twenty-four (24) months after the 2021 Consent Decree's Effective Date.

B. **Sorenson's December 6, 2021 Application for Insurance with The Hartford**

19. On or around October 22, 2021, Sorenson's broker Marsh contacted The Hartford

seeking terms and a binder in connection with Sorenson's professional liability coverage.

20. On or around December 2, 2021, Sorenson completed and submitted The Hartford Professional Liability Insurance Application (the "Application").

21. On December 6, 2021, only three days after entering into the 2021 Consent Decree, Sorenson completed the Application to procure issuance of The Hartford Policy and submitted it to The Hartford on December 7, 2021.

22. On December 9, 2021, The Hartford, in reliance on the representations, statements and positions in the Application, began the process of issuing The Hartford Policy to Sorenson.

23. Although required by the Application, the Defendants did not disclose to The Hartford the settlement with the FCC and/or the circumstances surrounding the 2021 Consent Decree prior to The Hartford's issuance of The Hartford Policy (the "2021 Undisclosed/Misrepresented Matter").

**C.** ███████████

    **1.** ███████████████████████

24. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

25. ███████████████████████████████████████████████████████████████████████████████████████████████████████

26. ███████████████████████████████████



5
4884-9510-0278.v3



4884-9510-0278.v3



\* \* \*

E. ██████████████████

32. ██████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

33. ███████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

34. ███████████████████████████████████
████████████████████████████████████████

## II. THE HARTFORD POLICY

35. The Hartford Policy contains the following relevant terms:

**SECTION I: SCOPE OF COVERAGE**

    **A.    COVERAGE AGREEMENT**

We will pay on behalf of an **Insured**,[3] subject to the Limits of Liability, such **Damages** and **Claim Expenses** in excess of the applicable Deductible for **Claims** first made during the **Policy Period** or applicable Extended Reporting Period and reported in writing to us immediately, but in no event later than sixty (60) calendar days after the expiration date of the **Policy Period** or within any applicable Extended Reporting Period. The **Damages** and **Claims Expenses** must arise out of a **Wrongful Act** or **Personal Injury** that occurs on or after the **Retroactive Date** as stated in the Declarations and before the end of the **Policy Period**. As a condition precedent to coverage under this Policy, no **Insured** was aware as of the **Inception Date** of any act, error or omission that he or she knew, or could have reasonably foreseen, to be the basis of a **Claim**.

\* \* \*

**B.**     **DEFINITIONS**

    3.     **"Claim"** means an allegation of a **Wrongful Act** or **Personal Injury** in conjunction with:

         a.     a written demand seeking monetary damages or other civil non-monetary relief against an **Insured**;

         b.     a civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading against an **Insured**; or

         c.     a request received by an **Insured** to toll or waive the statute of limitations or other bars against the filing or maintenance of a lawsuit or arbitration proceeding seeking **Damages** against, or services from, an **Insured**.

\* \* \*

---

[3] Bolded terms are defined in The Hartford Policy and incorporated herein by reference.

6. **"Damages"** means the monetary amounts that an **Insured** becomes legally liable to pay solely as a result of a **Claim** covered under this Policy, including:

   a. compensatory damages;

   b. settlement amounts, provided any settlement is made with our prior written approval and we had the opportunity to meaningfully participate or assist in the negotiations;

   c. interest in the amount of any judgment covered by this Policy that accrues after the entry of judgment and before we have paid or tendered or deposited into court that part of the judgment which does not exceed the applicable Limits of Liability shown in the Declaration;

   d. punitive or exemplary damages; or

   e. the multiple portion of any multiplied damage awarded.

   **Damages** does not include:

   a. restitution, reduction, or set off of any fees, other consideration, and/or expenses paid to or charged by an **Insured** for **Professional Services**;

   b. matters deemed uninsurable by law; provided, however, that with respect to punitive and exemplary damages, or the multiple portion of any multiplied damage award, the insurability of such damages shall be governed by the internal laws of any applicable jurisdiction that most favors coverage of such damages. We shall not contend for any reason, unless appropriate to do so as a matter of public policy, that such

9

    damages are uninsurable; or any reasonable, unless appropriate to do so as a matter of public policy, that such damages are uninsurable;

  c. equitable, injunctive or other non-monetary relief; or

  d. taxes, fines, penalties and sanctions assessed against an **Insured**.

13. **"Interrelated Claims"** means all **Claims** that include, in whole or in part, **Wrongful Acts** or **Personal Injury** that have as a common nexus any fact, circumstance, situation, event, transaction, goal, motive, methodology, or cause or series of casually connected facts, circumstances, situations, events, transactions, goals, motives, methodologies or causes.

* * *

**F. INTERRELATED CLAIMS**

All **Claims** based upon, arising from or in any way related to the same **Wrongful Act** or **Personal Injury** or **Interrelated Claim** shall be deemed to be a single **Claim** for all purposes under this Policy first made on the earliest date that:

1. any such **Claims** was first made, regardless of whether such date is before or during the **Policy Period**;

2. notice of any **Wrongful Act** or **Personal Injury** described above was given to us under this Policy pursuant to **Section III., B. NOTICE OF CLAIM**; or

3. notice of any **Wrongful Act** or **Personal Injury** described above was given under any prior insurance policy.

* * *

10

**SECTION II: EXCLUSIONS**

**EXCLUSIONS** – We shall not pay **Damages** or **Claims Expenses** in connection with any **Claim:**

\* \* \*

G. for, based upon, arising from, or in any way related to any prior or pending demand, suit or proceeding against any **Insureds** as of the applicable **Prior or Pending Date** in ITEM 8 of the Declarations or the same or any substantially similar fact, circumstance or situation underlying or alleged in such demand, suit or proceeding.

\* \* \*

**SECTION IV: GENERAL CONDITIONS**

\* \* \*

G. **APPLICATION**

1. By accepting this Policy, you represent that the declarations and statements contained in the **Application** are true, accurate and complete. This Policy is issued in reliance upon the **Application**.

2. If the **Application** contains intentional misrepresentations or misrepresentations that materially affect the acceptance of the risk by us, no coverage shall be afforded under this Policy for any **Insureds** who knew on the **Inception Date** of this Policy of the facts that were so misrepresented, provided that:

   a. Knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; and

   b. Knowledge possessed by any principal, partner, chief executive officer, general counsel, chief financial officer, risk manager, human resources director or any position equivalent to the foregoing of the **Named Insured**, or anyone signing the **Application**, shall be imputed to all

11

**Insured Entities**. No other person's knowledge shall be imputed to an **Insured Entity**.

\* \* \*

# FIRST CAUSE OF ACTION

**(Declaratory Judgment: Coverage Under The Hartford Policy Is Not Triggered Based On Failure to Satisfy Conditions Precedent to Coverage)**

36. The Hartford hereby incorporates and re-alleges the preceding allegations as if fully set forth herein.

37. The Hartford Policy's Coverage Agreement states that "[a]s a condition precedent to coverage under The Hartford Policy, no **Insured** was aware as of **the Inception Date** of any act, error or omission that he or she knew, or could have reasonably foreseen, to be the basis of a **Claim**."

38. In the 2021 Undisclosed/Misrepresented Matter, CaptionCall admitted that its actions violated the prohibition on incentives for use of IP CTS to health hearing professionals, the IP CTS registration and certification requirements, along with the data collection and audits requirements. CaptionCall also agreed to implement a comprehensive compliance plan, reimburse $28 million to the TRS Fund, and pay a $12.5 million civil penalty.

39. The 2021 Consent Decree, as concerning the 2021 Undisclosed/Misrepresented Matter, provided that Sorenson and CaptionCall "acknowledge and agree that upon execution of this Consent Decree," the amount of reimbursement of $28 million and the civil penalty of $12.5 million "shall become a 'Claim' or 'Debt' as defined in 31 U.S.C. § 3701(b)(1)."

40. Accordingly, prior to the Hartford Policy's November 30, 2021 **Inception Date**, Sorenson, CaptionCall and/or an **Insured** knew or should have known, at a minimum:

12

a) That in the last 5 years, there had been a pending and/or closed claim and/or demand, and/or administrative or regulatory actions and/or proceeding involving Sorenson, as the FCC had already investigated and determined that Sorenson and/or CaptionCall violated TRS Rules;

b) That Sorenson and CaptionCall had agreed to pay $40,500,000 in a settlement to the FCC for violating TRS Rules, the largest ever FCC settlement for TRS violations; and/or

c) That the Defendants and the FCC were actively negotiating, and/or at a minimum finalizing the terms of the December 3, 2021 Consent Decree, which imposed upon the Defendants a future heightened degree of self-reporting of potential violations and noncompliance with TRS Rules, and which could form the basis of an actual or alleged fact, circumstance, incident, situation, act, error, omission which might reasonably give rise to a Claim under the Policy.

41. Sorenson and/or CaptionCall were aware, as of November 30, 2021, of an act, error or omission (including but not limited to the 2021 Undisclosed/Misrepresented Matter), that it knew, or could reasonably have foreseen, to be the basis of a **Claim** under the Hartford Policy.

42. As such, the condition precedent under The Hartford Policy's Coverage Agreement is unmet and coverage is not triggered under The Hartford Policy for the ██████████████████████████████████████████████

## SECOND CAUSE OF ACTION

**(Declaratory Judgment: Coverage Under The Hartford Policy Is Barred Because The Claims Pre-Date The Hartford's Policy Period)**

43. The Hartford hereby incorporates and re-alleges the preceding allegations as if fully set forth herein.

44. The Hartford Policy only applies to **Claims** first made against the **Insured** during the November 30, 2021 to November 30, 2022 Policy Period.

45. The Hartford Policy further provides that "[a]ll **Claims** based upon, arising from or in any way related to the same **Wrongful Act** or **Personal Injury** or **Interrelated Claim** shall be deemed to be a single **Claim** for all purposes under this Policy first made on the earliest date that:

13

(1) any such **Claims** was first made, regardless of whether such date is before or during the **Policy Period**; (2) notice of any **Wrongful Act** or **Personal Injury** described above was given to us under this Policy pursuant to **Section III., B. NOTICE OF CLAIM**; or (3) notice of any **Wrongful Act** or **Personal Injury** described above was given under any prior insurance policy."

46. Further, The Hartford Policy states that "**Interrelated Claims**" means "all **Claims** that include, in whole or in part, **Wrongful Acts** or **Personal Injury** that have as a common nexus any fact, circumstance, situation, event, transaction, goal, motive, methodology, or cause or series of casually connected facts, circumstances, situations, events, transactions, goals, motives, methodologies or causes."

47. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

48. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

49. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

14
4884-9510-0278.v3

50. ███████████████████████████████████████████████████ are a single **Claim** with the FCC's initial and/or earlier 2017 and/or 2020 **Claims** and/or demands on Sorenson and/or CaptionCall to be deemed first made on the earlier of those dates.

51. The Insuring Agreement of The Hartford Policy is not triggered, and therefore coverage is barred, as ███████████████████████████████████████ ███ constitute a single **Claim** first made prior to the **Inception Date** of The Hartford Policy's period.

52. As such, coverage is independently barred under The Hartford Policy for ████ ███████████████████████████████████████████ as they do not constitute **Claims** first made against an **Insured** during The Hartford Policy's November 30, 2021 to November 30, 2022 Policy Period.

### THIRD CAUSE OF ACTION

**(Declaratory Judgment: Coverage Under The Hartford Policy Is Barred Under Exclusion G)**

53. The Hartford hereby incorporates and re-alleges the preceding allegations as if fully set forth herein.

54. Exclusion G under The Hartford Policy states that coverage is barred in connection with any **Claim** "for, based upon, arising from, or in any way related to any prior or pending demand, suit or proceeding against any **Insureds** as of the applicable **Prior or Pending Date** in

---

4 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

ITEM 8 of the Declarations or the same or any substantially similar fact, circumstance or situation underlying or alleged in such demand, suit or proceeding."

55. As pled above, ▇▇▇▇▇▇▇▇▇▇▇▇▇ are based upon, arise from and/or relate to the prior and initial 2017 and/or 2020 FCC **Claim(s)** and/or demands pending as of November 30, 2021, the Prior or Pending Date set forth in Item 8. of The Hartford Policy's Declarations.

56. As such, Exclusion G operates to independently bar coverage for ▇▇▇▇▇▇▇▇▇▇▇▇▇.

## FOURTH CAUSE OF ACTION

**(Declaratory Judgment: Coverage Under The Hartford Policy Is Barred Based On The Application's Loss History Exclusion)**

57. The Hartford hereby incorporates and re-alleges the preceding allegations as if fully set forth herein.

58. In the Application, Sorenson answered "No" to Section G. "Loss History" questions 2 and 3, which state in relevant part as follows:

> **This is an application for a CLAIMS-MADE AND REPORTED Policy**
>
> If a policy is issued, this application will attach to and become part of the policy. Therefore, it is important that all questions are answered accurately.
> \* \* \*
> **Section G. Loss History**
> \* \* \*
> 2) In the last 5 years, has there been or is there now any: pending claim, closed claim, litigation, demand, or arbitration, civil, criminal, administrative or regulatory action or proceeding involving the Applicant or any other person or entity applying for coverage, including those reported to and/or covered under a previous insurance policy? No
>
> 3) In the last 5 years, are any of the Applicant's Owners, Principals, Directors, Officers aware of any actual or alleged fact, circumstance, incident, situation,

16

act, error, omission which might reasonably give rise to a claim under the proposed policy? No

**If Yes, please complete Supplemental Claim Form for each claim.**

**It is understood and agreed that with if [sic] any reprimand, disciplinary or criminal actions; litigation, claim, arbitration, civil, criminal, administrative or regulatory action or proceeding; or knowledge or information, exists, any claim or action for, based upon, arising from or in any way related thereto is excluded from this proposed coverage. …**
**\* \* \***

59. The Hartford Policy's Section I.b.1 (Scope of Coverage – Application) states that the Application "shall be deemed a part of this Policy and attached hereto."

60. The Hartford Policy, through the Application, expressly provides, in relevant part, that with any claim, administrative or regulatory proceeding or action, then any claim or action for, based upon, arising from or in any way related to Section G. subparts 2) and 3) quoted above is excluded from coverage.

61. 

62. As such, the exclusionary provision in the Application's Section G. "Loss History" operates to independently bar coverage for ███████████████████████
███████████

### FIFTH CAUSE OF ACTION

**(Declaratory Judgment: Coverage Under The Hartford Policy Is Barred Based On Section G. Application)**

63. The Hartford hereby incorporates and re-alleges the preceding allegations as if fully set forth herein.

64. The Hartford Policy, at Section G. Application, provides, in relevant part, that "[i]f the **Application** contains intentional misrepresentations or misrepresentations that materially affect the acceptance of the risk by us, no coverage shall be afforded under this Policy for any **Insureds** who knew on the **Inception Date** of this Policy of the facts that were so misrepresented…".

65. As pled above, Sorenson did not disclose to The Hartford in the Application the 2021 Undisclosed/Misrepresented Matter.

66. The failure of Sorenson to do so constitutes intentional misrepresentations or misrepresentations that materially affected the acceptance of the risk by The Hartford.

67. No coverage shall be afforded under The Hartford Policy for any **Insureds** who knew on the **Inception Date** of The Hartford Policy of the facts that were so misrepresented.

68. As such, The Hartford Policy at Section G. Application operates to independently bar coverage for ███████████████████████████████████████

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff reserves its rights to assert additional grounds for declinations to coverage under The Hartford Policy for ███████████████████████████████████████ ███████████, and prays that the Court issue judgments as follows:

(1) ███████████████████████ for ███████████████████████████████ is not triggered under The Hartford Policy based on failure to satisfy conditions precedent to coverage;

(2) Declaration that coverage for ███████████████████████████████ ███████████████████████ is barred under The Hartford Policy based because the **Claims** pre-date The Hartford Policy's period;

(3) Declaration that coverage for ███████████████████████████████ ███████████████████████ is barred under The Hartford Policy's Exclusion G;

18

(4) Declaration that coverage for ▮▮▮▮▮▮▮▮▮▮ is barred under The Hartford Policy's Application's Loss History Exclusion;

(5) Declaration that coverage for ▮▮▮▮▮▮▮▮▮▮ is barred under The Hartford Policy's Section G. Application.

(6) For costs of suit incurred herein;

(7) For attorneys' fees incurred herein, as available;

(8) For pre-judgment and post-judgment interest at the legal rate; and

(9) For such other relief as the Court deems just and equitable.

DATED September 22, 2023.

/s/Angus Edwards
Angus Edwards
Parsons Behle & Latimer

Blaise U. Chow (pro hac vice forthcoming)
Christina R. Salem (pro hac vice forthcoming)
Andres Avila (pro hac vice forthcoming)
KENNEDYS CMK, LLP
570 Lexington Avenue
8th Floor
New York, N.Y. 10022

Attorneys for Plaintiff

4884-9510-0278.v3